UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHERICE MORRIS,<br><br>                          **Plaintiff,**<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                          **Defendant.** | Civ. No. 17-757-KM<br><br>**OPINION** |

## KEVIN MCNULTY, U.S.D.J.:

Ms. Cherice Morris brings this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) to review a final decision of the Commissioner of Social Security ("Commissioner") denying her claims to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–34, and Supplemental Security Income ("SSI"), 42 U.S.C. § 1381. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is REMANDED.

### I. BACKGROUND

Ms. Morris seeks to reverse a finding that she did not meet the Social Security Act's definition of disability from June 17, 2011 to May 19, 2015. (Pl. Br. 1).[1] Ms. Morris applied for DIB and SSI on February 28, 2013. (R. 11, 168–

---

[1] Citations to the record are abbreviated as follows:

"R." = Administrative Record (ECF no. 5)

"Pl. Br." = Brief in Support of Cherice Morris (ECF no. 10)

1

75). In both applications, she alleged disability beginning June 17, 2011. (R. 11, 168-75). These claims were denied initially on June 4, 2013, and upon reconsideration on July 29, 2013. (R. 11, 114-19, 121-26). On August 2, 2013, Ms. Morris submitted a written request for a hearing. (R. 11). On October 28, 2014, Ms. Morris appeared and testified at a hearing before ALJ Meryl L. Lissek. (R. 11-20, 29-67). Also in attendance was Ms. Morris's mother, Ms. Rhonda Morris. (R. 11, 29). Ms. Morris was not represented by an attorney or other representative at the hearing. (R. 11). On May 19, 2015, the ALJ issued an unfavorable decision which found her "not disabled" for purposes of the Social Security Act. (R. 11-20).

Ms. Morris sought review from the Appeals Council. (R. 1-6, 333-35). The Appeals Council found that there were no grounds for further review. (R. 1-5). Ms. Morris then appealed to this Court, challenging the ALJ's determination that she was not disabled from June 17, 2011 to May 19, 2015. (Pl. Br. 1).

## II. DISCUSSION

To qualify for DIB or SSI, a claimant must meet income and resource limitations and show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382, 1382c(a)(3)(A),(B); 20 C.F.R. § 416.905(a); *see Illig v. Comm'r Soc. Sec.*, 570 F. App'x 262, 264 (3d Cir. 2014); *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009).

### A. The Five-Step Process and This Court's Standard of Review

Under the authority of the Social Security Act, the Social Security Administration has established a five-step evaluation process for determining whether a claimant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. This Court's review necessarily incorporates a determination of whether the ALJ properly followed the five-step process prescribed by regulation. The steps may be briefly summarized as follows:

2

**Step One:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, move to step two.

**Step Two:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

**Step Three:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 C.F.R. Pt. 404, subpt. P, app. 1, Pt. A. (Those Part A criteria are purposely set at a high level to identify clear cases of disability without further analysis.) If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

**Step Four:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)–(f), 416.920(e)–(f). If not, move to step five.

**Step Five:** At this point, the burden shifts to the Commissioner to demonstrate that the claimant, considering her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

As to all legal issues, this Court conducts a plenary review. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to factual findings, this Court adheres to the ALJ's findings, as long as they are supported by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citing 42 U.S.C. § 405(g)). Where facts are disputed, this Court will "determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Zirnsak v. Colvin*, 777 F.3d 607,

610 (3d Cir. 2014) (internal quotation marks and citation omitted). Substantial evidence "is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted).

> [I]n evaluating whether substantial evidence supports the ALJ's findings ... leniency should be shown in establishing the claimant's disability, and ... the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal quotation marks and citations omitted). When there is substantial evidence to support the ALJ's factual findings, however, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)); *Zirnsak*, 777 F.3d at 610-11 ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

This Court may, under 42 U.S.C. § 405(g), affirm, modify, or reverse the Commissioner's decision, or it may remand the matter to the Commissioner for a rehearing. *Podedworny v. Harris*, 745 F.2d 210, 221 (3d Cir. 1984); *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 865-66 (3d Cir. 2007).

Remand is proper if the record is incomplete, or if there is a lack of substantial evidence to support a definitive finding on one or more steps of the five-step inquiry. *See Podedworny*, 745 F.2d at 221-22. Remand is also proper if the ALJ's decision lacks adequate reasoning or support for its conclusions, or if it contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000). It is also proper to remand where the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted).

4

### B. The ALJ's Decision

ALJ Meryl L. Lissek followed the five-step process in determining that Ms. Morris was not disabled from June 17, 2011 (the alleged onset date) to May 19, 2015 (the date of her hearing). The ALJ's findings may be summarized as follows:

**Step One:** At step one, the ALJ found that Ms. Morris had not engaged in substantial gainful activity since June 17, 2011, the alleged onset date. (R. 13).

**Step Two:** At step two, the ALJ determined that Ms. Morris had the following severe impairment: cervical and lumbosacral spine impairment with pain syndrome. (R. 13).

**Step Three:** At step three, the ALJ found that Ms. Morris did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, subpt. P., app. 1. (R. 14). The ALJ gave a one-sentence explanation: "Section 1.04 was considered." (R. 14).

**Step Four:** At step four, "[a]fter careful consideration of the entire record," the ALJ found that Ms. Morris had the following RFC:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she cannot climb ladders or scaffolds, crouch or crawl. She can occasionally climb stairs and ramps. She is able to do work that can be learned in 30 days or less and that involves simple instructions. She can have occasional contact with supervisors and with the general public. She can work in proximity of coworkers but not together with them. She can do work where the routine does not change throughout the day.

(R. 14-15). The ALJ also determined that Ms. Morris was unable to perform her past relevant work as a bus driver (Dictionary of Occupational Titles ("DOT")# 913.463-010). (R. 18). The demands of that job exceed her RFC. (R. 18).

**Step Five:** At step five, the ALJ considered Ms. Morris's age, education, work experience, and RFC, as well as the Medical-Vocational Guidelines. (R. 18). The Medical-Vocational Guidelines are tables that set forth presumptions of whether significant numbers of jobs exist in the national economy for a claimant. 20 C.F.R. Pt. 404, subpt. P, app. 2. These presumptions vary based on a claimant's age, education, work experience, and work capability. *Id.* The ALJ determined that Ms. Morris has been able to perform jobs existing in significant numbers in the national economy since June 17, 2011. (R. 18-19). Relying on the opinion of a vocational expert ("VE"), the ALJ identified several representative jobs that Ms. Morris could perform despite her limitations: ticket printer and tagger (DOT# 652.685-094), garment folder (DOT# 789.687-066), and labeler (DOT# 920.687-126). (R. 19). According to the VE, there are over 400,000 such jobs nationally. (R. 19).

Therefore, the ALJ ultimately determined that Ms. Morris was "not disabled" for purposes of the Social Security Act. (R. 19).

### C. Analysis of Ms. Morris's Appeal

Ms. Morris challenges ALJ Lissek's determination that she has not been disabled from June 17, 2011 to May 19, 2015. She alleges that the ALJ failed to elicit a valid waiver of the right to representation and, given Ms. Morris's *pro se* status, did not properly develop the record. (Pl. Br. 12). She also claims that the ALJ committed errors at steps two, three, four, and five. (Pl. Br. 9-36).

At step two, Ms. Morris argues that the ALJ should have found obesity and diabetes to be severe impairments, or at least explain why these impairments are not severe. (Pl. Br. 11, 26). At step three, Ms. Morris argues that the "three words and a number" (*i.e.*, "Section 1.04 was considered") analysis was not sufficient. (Pl. Br. 22). Additionally, there are concerns that the ALJ did not consider the impact of obesity when determining if she met a listing.

At step four, Ms. Morris contends that the limitations in the RFC are unjustified. She argues that the mental limitations are unconnected to any

6

"severe" mental impairment, (Pl. Br. 11), and the ALJ provides "no explanation" for the conclusion that she can perform the demands of light work. (Pl. Br. 34). Furthermore, Ms. Morris claims that the ALJ never mentions or accepts any findings other than those of the government's examiner. (Pl. Br. 23). At step five, Ms. Morris argues that the VE testimony was inappropriate because it was submitted as an interrogatory answer (and not as live testimony), that she did not at the time appreciate the importance of the VE testimony, and that the VE's identity and credentials were not supplied by the ALJ or placed in the record. (Pl. Br. 34-35).

### 1. Waiver of Right to Representation

Ms. Morris alleges that the ALJ failed to elicit a valid waiver of the right to representation and, given her *pro se* status, the ALJ did not appropriately develop the administrative record.

#### a. Knowing and Intelligent Waiver

Though a claimant does not have a constitutional right to counsel at a Social Security disability hearing, claimants are permitted to bring counsel to their hearings. *See Vivaritas v. Comm'r of Soc. Sec.*, 264 F. App'x 155, 157 (3d Cir. 2008) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1705). While counsel may be useful in assisting a claimant, "[a] lack of counsel, itself, is not sufficient cause for remand." *Bentley v. Comm'r of Soc. Sec.*, No. 10-2714, 2011 WL 4594290, at *9 (D.N.J. Sept. 30, 2011).

ALJs must ensure that claimants are given notice of their right to bring counsel and claimants must waive their right knowingly and intelligently. *Vivaritas*, 264 F. App'x at 157-58 (citing *Smith v. Schweiker*, 677 F.2d 826, 828 (11th Cir. 1982)); *see Yakley v. Astrue*, No. 12-857, 2013 WL 1010671, at *4 (D.N.J. Mar. 13, 2013) (noting that the Third Circuit has acknowledged the Seventh Circuit's "knowingly and intelligently" test without explicitly adopting it). However, there is no rigid protocol an ALJ must follow when obtaining this waiver. *McGrew v. Colvin*, No. 13-cv-144, 2013 WL 2948448, at * 5 (D.N.J. June 14, 2013) (citing *Vivaritas*, 264 F. App'x at 158 n.1).

7

Should a claimant proceed without counsel, the ALJ has a heightened duty to assist the claimant in developing the administrative record and "must scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," because a claimant unrepresented by counsel is not presumed to have made his or her best case before the ALJ. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (internal quotation marks omitted).

In this case, Ms. Morris received notification of her right to representation in the administrative proceedings, obtained representation, dismissed her attorney prior to the hearing, and then stated in writing that she would represent herself at the hearing. (R. 115-16, 124-28, 133, 136-47, 159-60). The notification Ms. Morris received about representation informed her where she could find help with her appeal. (R. 115-16).

Ms. Morris claims that there are several problems with the ALJ's statements. She alleges that the ALJ pressured her to continue by noting that rescheduling the hearing may take three months or longer; by stating that Ms. Morris could appeal an unfavorable decision and obtain counsel at that time; by suggesting that the ALJ could help find her medical records (which is one of the services an attorney would provide); and by stating that it is "perfectly possible" to have a fair hearing without a representative. (Pl. Br. 16-18).

Reproduced below is the relevant part of the ALJ's statement about representation:

> First let me tell you, Ms. Morris, that if you do not go ahead today with the hearing, it will be probably at least three months before you get another scheduled date for a hearing. Also it is perfectly possible to have a fair hearing either with or without a representative. That is a personal choice on your part.
>
> Now what a representative could do for you, a representative could help you to gather medical records and other documents in support of your case. A representative can help you to organize your case and could help you to present your case before an administrative law judge.

8

There may be representatives who do not charge any money, and since it seems that you qualify for SSI based on your resources, you would probably qualify for free legal services as well. Or you could get a representative or an attorney on a contingency fee basis which means that they would only get paid in the event that you won your case. And then they would get paid usually a part of back benefits which is usually 25 percent of back benefits or around $6,000. And if you do not win your case, they would not get paid at all.

Now if you go ahead today with the hearing today, and if I notice that there are documents missing from your file that I need, then I can take steps through my office to get those records and add them to your file....

Also if you go ahead today and you are not happy with the decision that I make, you would be free to appeal that decision. And you could get a representative at that time if you so choose.

(R. 32-33 (paragraph breaks added)).

The ALJ then asked Ms. Morris if she had wanted to adjourn and obtain another lawyer:

| ALJ: | So, first of all, Ms. Morris, did you have any questions about getting a representative? |
| --- | --- |
| CLMT: | No, thank you. |
| ALJ: | Okay. Did you want to have a chance to consult with your mother at all? |
| CLMT: | No, we consulted about it. |
| ALJ: | Okay. So do you want to proceed today, or do you want -- |
| CLMT: | Yes. |
| ALJ: | -- an adjournment. You do want to proceed[?] |
| CLMT: | I do want to proceed. |
| ALJ: | Okay. That's perfectly fine. |

(R. 33-34).

Given the circumstances of this case, the ALJ's comments and discussion were sufficient to elicit a knowing and intelligent waiver. First, the ALJ informed Ms. Morris of her rights and options. ALJ Lissek told Ms. Morris

9

that she had a right to be represented by counsel, how counsel could help, and how she could obtain counsel without paying (unless she won). These comments are sufficiently similar to the ALJs comments in *Vivaritas*, which were found "ordinarily ... sufficient to establish that a claimant waiving her right to counsel during an ALJ hearing acted knowingly and intelligently." 264 F. App'x at 159. (In *Vivaritas*, the claimant had mental limitations that limited her ability to knowingly and intelligently waive her rights. *Id.* This issue is not present here because Ms. Morris has not alleged mental limitations such as low intellectual functioning.) ALJ Lissek's comments were sufficiently distinguishable from *Smith v. Schweiker*, where the ALJ merely referenced a document that explained a claimant's right to counsel: "In the Notice of Hearing which I sent to you, you were advised, were you not, that you had a right to have an attorney if you wanted to, but you didn't have to? You could represent yourself." 677 F.2d 826, 828 (11th Cir. 1982); *see Vivaritas*, 264 F. App'x at 157-58 (citing *Smith v. Schweiker*, 677 F.2d at 828); *Yakely*, 2013 WL 1010671, at *1 (finding that an ALJ asking if the claimant understood a letter informing him of his right to counsel insufficient to obtain a knowing and intelligent waiver).

Second, it is acceptable for an ALJ to mention that an adjournment will cause additional delay and that an ALJ can obtain additional medical records that a lawyer would have obtained. *See Vivaritas*, 264 F. App'x at 157-59. Both of these are true statements. It is true that a claimant may decide to forgo obtaining counsel to avoid delay. But a claimant can obtain a fair hearing without counsel. *See Vivaritas*, 264 F. App'x at 157 (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1705); *Bentley*, 2011 WL 4594290, at *9-10.

Third, a claimant like Ms. Morris who obtained and then dismissed that counsel necessarily knows about her right to counsel (absent other circumstances such as mental limitations). In this case, Ms. Morris hired

10

counsel and then dismissed her counsel prior to the hearing.[2] (R. 31-32, 136-47, 158-59, 160, 333). It defies logic that Ms. Morris, who does not allege mental limitations, could obtain counsel that helped her prepare for her hearing—but not realize that she could obtain counsel, have a lawyer help her prepare for the hearing, and that she would not have to pay upfront costs for legal services in this situation. She knew she could obtain counsel because she had in fact obtained counsel.

Fourth, Ms. Morris stated that she wanted to proceed without an attorney and that she consulted with her mother about this decision. (R. 33-34). She admits that she thought about waiving her right to counsel.

Ultimately, the ALJ obtained a knowing and intelligent waiver from Ms. Morris. Ms. Morris was aware of her rights and does not have a mental limitation that would prevent her from exercising a knowing and intelligent waiver.

### b. Developing the Administrative Record

If a claimant has knowingly and intelligently waived her right to representation, the ALJ has a duty to adequately develop the administrative record. *Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005). The ALJ hearing is not an adversarial hearing. When a *pro se* claimant appears before an ALJ, the ALJ has a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Vivaritas*, 264 F. App'x at 157-58 (citing *Reefer*, 326 F.3d at 380). The burden of proving that the

---

[2]    Ms. Morris does not address in her brief why she dismissed her counsel and she has provided conflicting explanations for what happened. In a September 18, 2014 letter, she wrote that "I dismiss the Law Office of Maurice J. Nadeau as my representative and direct that office to cease all efforts in my claim." (R. 159). A September 25, 2014 letter from Mr. Nadeau states that Ms. Morris dismissed her counsel and will be representing herself. (R. 160). At the October 28, 2014 ALJ hearing, Ms. Morris admitted on the record that she had a representative and dismissed that representative. (R. 31-32). However, in a July 21, 2015 letter to the Appeals Council, Ms. Morris's current attorney wrote that her counsel "simply failed to appear at the hearing." (R. 333). The letter also stated that "[t]here is no evidence that [counsel] withdrew and no evidence that the claimant dismissed him. He simply didn't show up." (R. 333).

ALJ discharged this duty depends on whether a proper waiver was obtained: If the ALJ does not obtain a knowing and intelligent waiver of counsel, the burden is on the Commissioner to show that the ALJ adequately developed the record. *Id.* at 158 (citing *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). If the ALJ obtained a valid waiver, the burden is on the claimant to show that the ALJ did not adequately develop the record. *See Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994).

In this case, the ALJ obtained additional medical records; she added over one hundred pages of evidence to the record. *See* (R. 709-816). However, the ALJ did not properly "probe into, inquire of, and explore for all the relevant facts" as required. *See Reefer*, 326 F.3d at 380. These deficiencies will be discussed in subsequent subsections.

### 2. The ALJ's Step Two Analysis

At step two, Ms. Morris argues that the ALJ should have found diabetes and obesity to be severe impairments, or at least explain why these impairments are not severe. (Pl. Br. 11, 26).

The ALJ briefly discussed Ms. Morris's diabetes, stating that "the claimant's diabetes is well controlled with oral medication" and there was no evidence of "neuropathy, retinitis or other associated abnormality." (R. 14). The ALJ cited medical records that provided substantial evidence for these findings. (R. 422-40). Therefore, the ALJ had substantial evidence to find that Ms. Morris's diabetes was not a "severe" impairment.

However, the ALJ did not even mention obesity at step two, even though Ms. Morris's physician, Dr. Patel, noted that she has "morbid obesity." (R. 790). Although a claimant bears the burden at step two, an ALJ with a *pro se* claimant has a duty to probe into the facts of the claimant's case. *See Vivaritas*, 264 F. App'x at 157-58 (citing *Reefer*, 326 F.3d at 380). The ALJ failed to do this by not even discussing Ms. Morris's obesity. This must be addressed on remand.

### 3. The ALJ's Step Three Analysis

At step three, Ms. Morris argues that the ALJ did not sufficiently analyze whether she qualified under a listing, especially given the potential impact of her obesity. The ALJ provided a one-sentence explanation for the step-three analysis: "Section 1.04 was considered." (R. 14). There are two significant problems with this section: **(a)** the one-sentence statement does not permit meaningful judicial review and **(b)** the statement does not consider a combination of impairments or the potential effects of obesity.

**(a)** The ALJ's step three analysis does not permit meaningful judicial review. At step three, the ALJ must perform "an analysis of whether and why [the claimant's individual impairments], or those impairments combined, are or are not equivalent in severity to one of the listed impairments." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000). The Third Circuit has clarified that this "does not require the ALJ to use particular language or adhere to a particular format," but must "ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Regulations give further guidance, providing that where a claimant has multiple impairments, the ALJ should "compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing." 20 C.F.R. § 404.1526(b)(2).

In this case, the ALJ did not satisfy the Third Circuit's standard or the regulations. Simply stating that "Section 1.04 was considered" does not sufficiently demonstrate analysis or ensure that there is a sufficient record to permit meaningful review by the Court.

**(b)** The ALJ's step three statement also does not consider a combination of impairments or the potential effects of her obesity. ALJs have a duty to consider whether a combination of impairments meets or medically equals a

listing. *See* 20 CFR § 404.1526(b)(3). If a claimant has more than one impairment, the ALJ must "combine [the claimant's] many medical impairments and compare them to analogous Appendix 1 listings." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008).

Additionally, although obesity is no longer a listed impairment, ALJs must "consider [obesity's] effects when evaluating disability" and recognize that "the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." *Titles II & XVI: Evaluation of Obesity*, SSR 02-1p (S.S.A. 2002). Specifically, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing." *Id.*

Obesity is also mentioned as a potential exacerbating factor in several listings. For instance, Listing 1.00, concerning musculoskeletal disorders, states that:

> Obesity is a medically determinable impairment that is often associated with disturbance of the musculoskeletal system, and disturbance of this system can be a major cause of disability in individuals with obesity. The combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately. Therefore, when determining whether an individual with obesity has a listing-level impairment or combination of impairments, and when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity, adjudicators must consider any additional and cumulative effects of obesity.

20 C.F.R. Pt. 404, subpt. P., app. 1, ¶ 1.00Q.

"[I]t is the ALJ's responsibility ... to identify the relevant listed impairment(s) and develop the arguments both for and against granting benefits." *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 151-52 (3d Cir. 2008) (quoting *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 n.2 (3d Cir. 2000)) (internal quotation marks omitted); *see also* SSR 02-1p. The ALJ ultimately failed to appropriately consider whether Ms. Morris's impairments, including

14

obesity, met or equaled a listing—particularly given the ALJ's heightened duty to probe into the facts of a *pro se* claimant's case. *See* subsection II.C.1.a–b. A proper step three analysis must be conducted on remand.

### 4. The ALJ's Step Four Analysis

At step four, Ms. Morris contends that the limitations in the RFC are unjustified. She argues that **(a)** the ALJ adds mental limitations that are unconnected to any "severe" mental impairment, **(b)** the ALJ provides "no explanation" for why she can perform the demands of light work, and **(c)** the ALJ never "mentions or accepts any findings other than those of the government's examiner." (Pl. Br. 11, 23, 34). These arguments are unavailing.

**(a)** First, the ALJ notes that Ms. Morris has depression caused by daily pain and that her pain "may have an emotional overlay." (R. 15-16). The ALJ thus limited her "to simple instructions" and provided for "social interaction limitations." (R. 14-18). These limitations are supported by substantial evidence in the record, which is all that is required by the statute.

**(b)** Second, the ALJ provides substantial evidence for why Ms. Morris can perform light work, given additional limitations. The ALJ notes that Ms. Morris cooks, drives occasionally, goes to the mall and out to lunch, and attends college classes five days a week. (R. 15). The orthopedic and consultative examinations showed a normal gait without an assistive device and intact neurological findings. (R. 447-55, 475-79, 709-14). Dr. Potashnik stated that Ms. Morris could walk without an assistive device, squat, and walk on her heels and tiptoes. (R. 709-10). Overall, this is substantial evidence for the ALJ to find that Ms. Morris could perform light work with additional limitations.

**(c)** Third, ALJ Lissek addressed several physicians' opinions when developing the RFC. She discussed the treatment records of Dr. Dobrow at Bergen Passaic Ambulatory Surgery Care, the consultative orthopedic examination with Dr. Di Lallo, an independent medical examination with Dr. Khanthan, an orthopedic consultative examination with Dr. Potashnik, and the records from treating internist Dr. Patel. (R. 15-17). It is the ALJ's duty to

15

address and discuss the record. The ALJ discharged this duty by analyzing the records from several physicians. It is not true that the ALJ "never mentions or accepts any findings other than those of the government's examiner." (Pl. Br. 23).

Ultimately, the step four analysis may change on remand once steps two and three are considered anew. However, there is no independent error at step four that would, in itself, warrant a remand.

### 5.     The ALJ's Step Five Analysis

Ms. Morris claims the ALJ erred at step 5. She avers that **(a)** the ALJ inappropriately used post-hearing evidence from the VE; **(b)** the ALJ did not afford Ms. Morris an opportunity to respond and cross-examine the VE; **(c)** Ms. Morris did not know the importance of the VE testimony; and **(d)** the record does not identify the VE or her credentials. This argument is based on the fact that the VE's testimony was submitted, by mail, to Ms. Morris after the hearing. The VE did not appear at the ALJ hearing. (R. 323-32).

**(a)** First, I assume, along with the Court in *Wallace v. Bowen*, that an ALJ can rely on such post-hearing evidence. In *Wallace*, the Third Circuit "assume[d] without deciding, that the [Social Security] statute and the regulations relied on by the Secretary permit the introduction of post-hearing evidence, which ... is frequently proffered by the claimant in support of his or her claim." *Wallace*, 869 F.2d at 191-92. Although the procedure is not ideal, the ALJ is permitted, under certain circumstances, to consider post-hearing evidence from a VE.

**(b)** Second, the ALJ did afford Ms. Morris an opportunity to cross-examine the VE in a supplemental hearing. It is a procedural error for an ALJ to send interrogatories, receive responses from a VE, and rely on those responses as evidence without notifying a claimant or affording the claimant an opportunity to respond. *See Tommaney v. Comm'r of Soc. Sec.*, No. 12-4843, 2014 WL 3809477, at *6 (D.N.J. Aug. 1, 2014). The Third Circuit has ruled that the Commissioner "may not rely on post-hearing reports without giving the

16

claimant an opportunity to cross-examine the authors of such reports, when such cross-examination may be required for a full and true disclosure of the facts." *Wallace*, 869 F.2d at 191-92. Even in cases where the claimant was notified of post-hearing responses, this court has remanded based on the lack of opportunity to cross-examine. *See Roberts v. Comm'r of Soc. Sec.*, No. 14-4289, 2013 WL 2096611, at *7 (D.N.J. May 14, 2013). "[A]n opportunity for cross-examination is an element of fundamental fairness of the hearing to which a claimant is entitled under ... the Social Security Act." *Id.* (citing *Wallace*, 869 F.2d at 191-92; 42 U.S.C. § 405(b)).

However, in this case, ALJ Lessik mailed the VE interrogatories to Ms. Morris and notified her of her right to "request a supplemental hearing at which you would have the opportunity to appear, testify, produce witnesses, and submit additional evidence and written or oral statements ...." (R. 324-25). The notice states that Ms. Morris will have a supplemental hearing if requested, unless she would receive a fully favorable decision. (R. 324). This distinguishes this case from *Wallace*, where the Third Circuit remanded a case because post-hearing evidence was used and the claimant was not notified of the opportunity to call for a supplemental hearing. 869 F.2d at 191-92 & n.4.

**(c)** Ms. Morris argues that she did not appreciate the importance of VE testimony. (Pl. Br. 35). It is entirely possible that an attorney would have responded more effectively—but Ms. Morris knowingly and intelligently waived her right to have an attorney present. Ms. Morris had the opportunity to have a supplemental hearing and address any concerns with the VE's written testimony. It is clearly not ideal that Ms. Morris did not have the opportunity to question the VE at the ALJ hearing, but Ms. Morris will be able to address any VE testimony on remand.

**(d)** The ALJ did not include a record of VE Tanya Edghill's credentials or qualifications in the record or in the mailing to Ms. Morris. The Hearings, Appeals, and Litigation Law Manual ("HALLEX") of the Social Security Administration, ALJs "must (on the record): Ask the VE to confirm his or her

17

impartiality, expertise, and professional qualifications" and "Ask the claimant and the representative whether they have any objection(s) to the VE testifying." HALLEX I-2-6-174, *Testimony of a Vocational Expert*. However, "HALLEX provisions ... lack the force of law and create no judicially-enforceable rights." *Bordes v. Comm'r of Soc. Sec.*, 235 F. App'x 853, 859 (3d Cir. 2007) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)); *see also Cartagena v. Comm'r of Soc. Sec.*, No. 2:10-cv-5712-WJM, 2012 WL 1161554, at *5 (Apr. 9, 2012) ("HALLEX is a purely internal manual and as such has no legal force and is not binding." (citing *Moore v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000)).

Nonetheless, if the testimony of Tanya Edghill or another VE is considered on remand, credentials should be put into the record. If she chooses, Ms. Morris will have the opportunity to challenge the VE's credentials.

### III. CONCLUSION

For the foregoing reasons, I will REMAND to the agency for further evaluation of Ms. Morris's case.

An appropriate order accompanies this opinion.

Dated: January 12, 2018

**KEVIN MCNULTY**
**United States District Judge**